# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **HAROLD KENNETH PHILLIPS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08CV00031 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **THE BRINK'S COMPANY, ET** | ) | By: James P. Jones |
| **AL.,** | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Richard F. Hawkins, III, The Hawkins Law Firm, PC, Richmond, Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

In this ERISA case, the administrator of a pension plan mistakenly failed for almost seven years to deduct from the plaintiff's monthly disability benefit the value of his union pension. I hold that the administrator's interpretation of the plan allowing it to make such deductions is reasonable, but that equitable considerations now prevent it from recouping the amounts previously paid in error.

## I

The plaintiff in this action, Harold Kenneth Phillips, asserts claims against the defendants, The Brink's Company ("Brink's") and The Brink's Company Pension-

Retirement Plan (the "Plan"), arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1461 (West 2008 & 2009). I referred the parties' cross-motions for summary judgment to a magistrate judge of this court pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2006). The magistrate judge issued a Report and Recommendation ("R&R") on May 12, 2009. The parties' objections to the R&R have been briefed and argued and are ripe for decision.

## II

The facts, as set forth in the summary judgment record, are as follows. Phillips worked for The Pittston Company[1] ("Pittston")[2] from 1974 to February 1997, when he was injured in a mining accident and became permanently disabled. For the first sixteen years of his employment, he was an underground coal miner covered by the United Mine Workers of America Retirement Fund ("UMWA Fund"). Phillips then received a promotion, and as a foreman he was covered by the Pension-Retirement Plan of The Pittston Company and its Subsidiaries.[3] The Plan calculates benefits

---

[1] The parties dispute whether the plaintiff worked for Pittston or its subsidiary Clinchfield Coal Company, but that dispute is immaterial because the Plan applies regardless.

[2] Pittston changed its name to The Brink's Company in 2003, so "Pittston" and "Brink's" are used synonymously in this opinion.

[3] This plan is a prior version of what is now called The Brink's Company Pension-Retirement Plan.

based on the full amount of time the participant worked for Pittston, including years during which the participant was a union employee. However, the Plan also has an offset provision, whereby Plan benefits are discounted by the "value" of union benefits that accrued while the participant worked for the company. The interpretation and application of this offset provision is at the center of this dispute.

Phillips applied for disability benefits under the Plan after he was granted Social Security disability benefits. On November 5, 1998, he received a letter from Joseph Verostic, Director of Human Resources for Pittston and a member of the Administrative Committee that has discretionary control over the Plan. The letter advised Phillips, "The Administrative Committee has approved your application for benefits under the disability provisions of the Company's Pension-Retirement Plan and has determined that you are eligible for a monthly actuarilly reduced benefit of $1,751.66." (Compl. Ex. A.) Phillips thereafter received monthly payments from the Plan in the amount of $1,751.66 for six years and ten months, from November 1998 to August 2005.

Phillips received a letter from Rosemary Sanborn, Senior Retirement Services Administrator for the Plan, on July 29, 2005, stating that "[d]ue to an oversight, at the time of your application for Plan disability benefits, a monthly reduction for a union offset was not applied." (Compl. Ex. B.) Phillips was notified that effective

- 3 -

September 1, 2005, his monthly benefits from the Plan would be reduced to $1,233.83. The Administrative Committee later informed Phillips that the $517.83 monthly reduction was the sum of a $341.50 monthly union offset and a $176.33 monthly fee to recoup past overpayment from 1998 to 2005.[4] The recoupment fee is set to continue until Phillips reaches age 81, by which time he will have paid more than $50,000 in recoupment fees. Phillips was purportedly overpaid a total of approximately $26,000. The recoupment schedule was derived by the Plan from an actuarial table to account for the time value of money.

To this date, Phillips has not received any actual payments from the UMWA Fund. Phillips never qualified for disability benefits under the UMWA Fund because he was not a union employee when he became disabled. Phillips will qualify for normal retirement benefits under the UMWA Fund in the amount of $316.25 per month once he is sixty-two years old. Phillips could have elected to receive early retirement benefits from UMWA in the amount of $196.35 per month beginning July 1, 2008, the month after he turned fifty-five years old, but he has not elected to do so.

------

[4] The $341.50 offset was based on an estimate of what Phillips' normal retirement benefits from the UMWA Fund would be. The UMWA subsequently notified Phillips that his normal retirement benefits would be $316.25. Phillips relayed this information to the Plan, at which time it re-adjusted his monthly payment and paid him a lump sum of approximately $918.96 to refund the excess amount that it had already recouped by that time. Phillips now receives a monthly payment of $1272.12, which includes a $316.25 offset for union benefits and a $163.29 fee to recoup past overpayment.

- 4 -

The "miscalculation" that occurred in Phillips' case also affected approximately fifteen other disabled employees from 1998 to 2001. Rosemary Sanborn, who was hired in 2001, discovered the mass error. She testified at her deposition that when she was first faced with calculating benefits for a disabled employee who had years of union service, she looked to past practices to determine how to offset the value of union benefits. Her immediate predecessor, Conley Parsley, did not offset union benefits until they were payable. Prior to Parsley, however, benefits that would be paid by UMWA upon normal retirement were always offset from disability benefits. Sanborn concluded that the correct method was to offset UMWA normal retirement benefits from the outset.

As a result of her findings, Sanborn in early 2002 inspected the files of all participants receiving disability benefits who had "union service" check-marked ("populated") in their files. At that time, she found about a dozen people who were being overpaid because union benefits had not been offset. Sanborn and her superiors decided not to proceed with a full manual inspection of all disability files at that time. Sanborn discovered the error in Phillips' case in 2005 when she had his file in hand for an annual continued disability review. Supposedly the error in Phillips' case was not discovered in 2002 because "union service" had not been populated in his electronic file. In July of 2005, Sanborn sent Phillips the above-described letter

- 5 -

decreasing his benefits. Sanborn and others performed a full manual review of the disability beneficiaries' files in October 2005. Sanborn stated in her deposition that there were twenty-three disabled employees who were overpaid at some point from 1995 to 2001 whose benefits were subsequently reduced to offset union benefits and to recoup past overpayment.

Phillips argues that under the terms of the Plan, the Plan may not offset his benefits with union benefits unless and until he actually receives union benefits, or at least until he is entitled to union benefits. The Plan argues that under the terms of the Plan, it must compare apples with apples—because disabled employees covered by the Plan receive the same benefits they would receive upon normal retirement, those benefits must be offset by union benefits received upon normal retirement.

Phillips claims that even if the Administrative Committee's current interpretation of the Plan is reasonable, the Plan should not be permitted to recoup the amounts allegedly overpaid to him from 1998 to 2005. He bases this claim on several theories, including estoppel, waiver, and breach of fiduciary duty. The plaintiff also attempts to bind the plan to its initial benefit calculation by estoppel and waiver.

The magistrate judge found that the union offset provision of the Plan is ambiguous and that the Administrative Committee's interpretation is reasonable. She concluded that the plaintiff could not proceed on an estoppel or waiver theory.

- 6 -

However, she recommended summary judgment for the plaintiff on his breach of fiduciary duty claim, finding that the proper equitable remedy was to preclude the Plan from recouping the amount it overpaid the plaintiff from November 1998 to August 2005.

III

The parties have timely objected to the magistrate judge's recommended findings that were not in their favor. I must determine de novo those portions of the R&R objected to. Fed. R. Civ. P. 72(b)(3). The parties agree that there is no genuine issue of material fact and that the case may be resolved on summary judgement. *See* Fed. R. Civ. P. 56(c). I agree with the magistrate judge's proposed findings that the union offset provision of the Plan is ambiguous and that the Administrative Committee's interpretation is reasonable. I also agree that the Plan may not recoup past overpayments in this case, but I come to this conclusion based on a slightly different rationale than that of the magistrate judge, as described below.

A

The parties object to the magistrate judge's recommended finding that the language of the Plan is ambiguous. Both contend that the Plan unambiguously favors their own interpretation. The disputed provision appears in the Plan as follows:

- 7 -

> In any case for which Benefit Accrual Service is given under this
> Section 4.04, the benefits under the Plan shall be reduced by the value
> of the Participant's benefit under another retirement plan which accrued
> with respect to service which was also used to calculate his accrued
> benefit under the Plan. In the event that the Participant does not provide
> to the Administrative Committee satisfactory evidence of the amount of
> his benefit under another retirement plan (and any other information
> necessary to determine the value of such benefit) as described in the
> foregoing sentence, such benefit shall be determined on an estimated
> basis taking into account his total years of service reflected on records
> of the Company and information reasonably available to the
> Administrative Committee as to the benefits provided by such retirement
> plan.

(Plan § 4.04.)[5] The key language in this case is that "the benefits under the Plan shall

be reduced by the value of the Participant's benefit under another retirement plan."

The parties agree that the sixteen years that Phillips worked for Pittston as a union

employee were credited towards the calculation of benefits under the Plan and the

UMWA Fund, and therefore Plan benefits should be reduced by the value of Phillips'

UMWA benefits. However, the parties dispute the meaning of the "value" of the

UMWA benefits that should be offset from disability benefits under the Plan.

Phillips contends that this language unambiguously means that his disability

benefits under the Plan should be reduced by the amount ("value") of the payments

---

[5] The record includes a copy of the 1995 Plan and the 2006 Plan, which were both
submitted as part of Exhibit 2 to Defendants' Memorandum in Support of Summary
Judgment. The differences between these two versions of the Plan are not material to the
issues in this case. Because the 1995 Plan is the operative document, citations in this opinion
refer to the 1995 Plan.

("benefit") he is presently receiving from the UMWA Fund. Since up to this point he has received nothing from the UMWA, Phillips argues that the "value" of those benefits, so far, has been zero. The defendants claim that this provision unambiguously provides that Plan benefits must be reduced by the "accrued benefit" of the UMWA Fund, which is defined in ERISA as an individual's benefit "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C.A. § 1002(23)(A).[6]

I agree with the magistrate judge's recommended finding that "the value of the Participant's benefit under another retirement plan" is ambiguous. The Plan does not define how such "value" will be determined. Either party's interpretation is plausible, as are other interpretations. For instance, as the magistrate judge suggests, the "value" of a future payment of benefits could be discounted to the present value of those payments, i.e., the actuarial equivalent. *See, e.g.*, 29 U.S.C.A. § 1054(c)(3).

Phillips' interpretation is not mandated by the language of the Plan. *Webster's New World Dictionary* defines "value" as "the worth of a thing in money or goods at a certain time." A certain time is not necessarily the present time. Even if the Plan

---

[6] This definition applies "except as provided in section 1054(c)(3)." 29 U.S.C.A. § 1002(23)(A). "[I]f an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . . ." 29 U.S.C.A. § 1054(c)(3).

- 9 -

specifically referred to the "present value" of the union benefit, the "present value" could refer to actual payments received, the amount to which the employee is currently entitled, or the present discounted value of the employee's accrued benefits payable upon retirement. Phillips fills dozens of pages of his briefs with arguments parsing the language of the Plan. These arguments show why Phillips' interpretation is plausible, but the fact that the plaintiff had to go to such great lengths to make his case demonstrates that the Plan language is ambiguous.

Nor does the plain language of the Plan unambiguously call for the defendants' interpretation. The defendants argue that the "accrued value" of the UMWA benefit is the amount due upon normal retirement. But the language of the Plan does not explicitly refer to the "value of the accrued benefit" of the UMWA Fund. Rather, it refers to "the value of the Participant's benefit under another retirement plan . . . which accrued [i.e., grew, added periodic gain] with respect to service which was also used to calculate his accrued benefit under the Plan." The phrase beginning with "which accrued" describes which benefits should be offset—those which resulted from service credited towards both union and Plan benefits. The "value" of the "benefit" could refer to the amount of the participant's payments just as easily as it could refer to the benefit the employee would receive upon normal retirement.

- 10 -

The Plan explicitly defines "Social Security Benefit" as "the yearly primary old age insurance benefit to which a Participant is, or would on application be, *entitled on his Normal Retirement Date* or his Late Retirement Date . . . ." (Plan § 1.35 (emphasis added).) The Plan easily could have defined "the Participant's benefit under another retirement plan" in such explicit terms, but it did not do so. As a result, the "value" of such "benefit" is undefined and ambiguous.

B

The plaintiff objects to the magistrate judge's proposed finding that Brink's did not abuse its discretion in interpreting the Plan. Although the Administrative Committee's interpretation may not be the best interpretation, it is a reasonable interpretation.

It is undisputed that the Administrative Committee has discretionary authority to interpret the provisions of the Plan. A fiduciary's discretionary decision under ERISA is reviewed for abuse of discretion and will not be disturbed if it is reasonable. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). In evaluating the reasonableness of a fiduciary's discretionary decision, a court may consider the following factors, among others:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with

- 11 -

earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43.

A conflict of interest exists where a plan administrator serves in the dual role of evaluating claims for benefits and paying the claims. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348-50 (2008). A conflict of interest does not change the standard of review from the deferential review normally applied, *id.* at 2350, and therefore does not call for the application of the *contra proferentem* rule construing ambiguities against the drafter, *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009). But "whenever a plan administrator employs its interpretive discretion to construe an ambiguous provision in favor of its financial interest, that fact may be considered as a factor weighing against the reasonableness of its decision." *Carden*, 559 F.3d at 261.

Several *Booth* factors weigh against the reasonableness of the defendants' interpretation. For instance, Brink's faces a conflict of interest[7] because it serves in the dual role of evaluating claims for benefits and paying the claims, and Brink's has

---

[7] The magistrate judge noted that there was a conflict of interest, and the defendants did not object to that finding.

Case 2:08-cv-00031-JPJ-PMS   Document 63   Filed 07/13/09   Page 12 of 22   Pageid#: 1529

interpreted the Plan to its own financial advantage. Also, some of the language in internal Plan documents and the 1997 Summary Plan Description ("SPD") suggest that Phillips' interpretation is superior. Specifically, the worksheet that Sanborn filled out when recalculating Phillips' union offset asks for the "Total Union Benefit *Payable*." (Admin. R. 59 (emphasis added).)[8] A letter to the plaintiff estimating the amount of his retirement benefits stated that the Plan benefit would be decreased if he was "awarded" a pension from the UMWA Fund. (Admin. R. 1.) The 1997 SPD[9] states, "In order to prevent duplication of benefits, your pension will be reduced by the amount of any benefit you are *entitled* to receive under a union pension Plan." (Defs.' Mem. in Supp. of Summ. J. Ex. 2 at 139 (emphasis added).)

It is also worth noting that the defendants have admitted that fifteen disabled employees covered by the Plan received no union offset from 1998 to 2001. But the defendant insists that this was a ministerial error, not an alternative interpretation of the Plan. The facts presented support this contention. Prior to 1995, the union offset was uniformly applied based on benefits due upon normal retirement. The principal

---

[8] The Administrative Record was submitted as Exhibit 1 to Defendants' Memorandum in Support of Summary Judgment.

[9] The plaintiff objects to the magistrate judge's reliance on the 2006 SPD. Although the 1997 SPD is the most relevant to this plaintiff since the 1995 Plan, not the 2006 Plan, applies to his claims, the 1995 and 2006 Plans are the same in all respects material to these claims and the magistrate judge's consideration of the 2006 SPD, summarizing the 2006 Plan, was not in error.

person responsible for the erroneous application of the union offset provision, Conley Parsley, attests that he did not interpret the Plan and had no authority to do so.

Despite the factors weighing against the defendants, overall I find the Administrative Committee's interpretation not unreasonable. Brink's says that the Plan Administrator is attempting to compare apples with apples—since disability benefits under the Plan pay the same amount that would be due under the Plan upon normal retirement, the defendants argue that those benefits should be offset with union benefits that would be due upon normal retirement. Otherwise, the Plan would pay out more to disabled beneficiaries than it pays to retirees. Of course, from the beneficiary's point of view, this results in lower disability benefits than normal retirement benefits since the UMWA Fund does not pay any disability benefits where a participant did not become disabled while a union employee, whereas the Fund will pay benefits when the participant reaches normal retirement age. But the Plan has no control over the UMWA Fund and should not be held responsible for the UMWA's decision not to pay disability benefits according to its proportionate responsibility based on a participant's work history as a union employee.

The defendants also note that as an alternative, the Plan could have been written to give participants no credit for time served as union employees. As the defendants read the Plan, participants receive an overall benefit by receiving credit

- 14 -

for time served as union employees, even though UMWA benefits are later offset, because Plan benefits are more generous than UMWA benefits.

In sum, I find that the Administrative Committee did not abuse its discretion by interpreting the Plan to permit offsetting of Plan disability benefits by the amount of UMWA benefits due upon normal retirement.

C

Phillips objects to the magistrate judge's proposed finding that he does not have an equitable claim for restitution, estoppel, or waiver. I find that estoppel and waiver claims are not available to the plaintiff under these facts.

The Fourth Circuit does not permit a federal common law claim of estoppel where the remedy sought would conflict with the clear language of a written ERISA plan. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-59 (4th Cir. 1992); *see also Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 238 (4th Cir. 2008) (noting that the federal common law under ERISA does not incorporate the principles of waiver and estoppel). The court has left open the possibility that estoppel might be available where the fiduciary statements at issue are interpretations of ambiguous plan provisions. *Coleman*, 969 F.2d at 59. Such an estoppel claim would advance the requirement that "'any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing.'" *Healthsouth Rehab.*

- 15 -

*Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) (quoting *Coleman*, 969 F.2d at 58-59). Employers and plan administrators should not have an incentive to write ambiguous provisions so that they may freely change their interpretation of those provisions.

Here, however, the facts show that Parsley and others in the human resources office acted contrary to the Administrative Committee's otherwise consistent interpretation of the Plan; these employees did not actually "interpret" the Plan, and the Committee's interpretation therefore did not change. Under such facts, a claim for estoppel or waiver to bind the Plan to its initial, incorrect calculation of Phillips' benefits is not permitted under Fourth Circuit law.

However, Phillips may recover wrongly recouped overpayments in equity. Where, as here, the Plan does not specifically allow recoupment of overpaid benefits, the employer must resort to an equitable remedy incorporated into the federal common law governing ERISA, and may only recover in restitution where the equities weigh in favor of such recoupment. This case parallels the circumstances in *Phillips v. Maritime Ass'n—I.L.A. Local Pension Plan*, 194 F. Supp. 2d 549, 555 (E.D. Tex. 2001), where a district court found that based on the specific facts of that case, an employer was not entitled to use the equitable doctrine of restitution to

- 16 -

collect overpayments made to an ERISA beneficiary. The court considered "the length of time it took to detect the overpayments." *Id.* at 557. It then reasoned:

> The balance of equities weighs in favor of disallowing Defendants to recoup the past overpayments. The overpayments were the result of more than just a mistake, they were the result of [the administrator's] breach of fiduciary duty owed to the Plaintiffs. Plaintiffs had no way of knowing that they were being overpaid. The overpayments in no way occurred through the fault of the Plaintiffs. Plaintiffs rationally planned their lives on the amounts stated in the QDROs [Qualified Domestic Relations Orders] and paid to them by the Plan each month for years, and as a result had a change of position.

*Id.*; *see also Porter v. Hartford Life & Accident Ins. Co.*, 609 F. Supp. 2d 817, 827-28 (E.D. Ark. 2009) (finding based on similar facts and analysis that plan could not recoup amount overpaid due to its own negligence); *Adams v. Brink's Co.*, 261 F. App'x 583, 597 (4th Cir. 2008) (unpublished) (weighing the equities and affirming the trial court's finding that plaintiff Addington need not repay overpaid benefits); *compare Johnson v. Ret. Program Plan for Employees of Certain Employers at the U.S. Dep't of Energy Facilities at Oak Ridge, Tenn.*, No. 3:05-cv-588, 2007 WL 649280, at *4-8 (E.D. Tenn. Feb. 27, 2007) (finding that the defendant plan could recoup overpaid pension benefits where the overpayments resulted from a ministerial error and the plaintiff did not prove that recoupment would cause him financial hardship).

- 17 -

The fiduciary responsibility provisions of ERISA invoke the common law of trusts. *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996). The Restatement of Trusts § 254, comment d, states:

> If the trustee by mistake or otherwise makes an overpayment to the beneficiary, he cannot recover the amount of the overpayment from the beneficiary personally or out of the beneficiary's interest in the trust estate, if the beneficiary had no notice that he was overpaid and has so changed his position that under all the circumstances it is inequitable to the beneficiary to permit such recovery. Among the circumstances which may be of importance in determining whether it is inequitable to allow the trustee indemnity are the following: (1) what disposition has been made by the beneficiary of the amount by which he was overpaid; (2) the amount of the overpayment; (3) the nature of the mistake made by the trustee, whether he was negligent or not; (4) the time which has elapsed since the overpayment was made.

The factors considered in *Phillips* and *Porter* and articulated in the Restatement of Trusts weigh against permitting Brink's to recoup overpayments in this case. It took almost seven years for the Plan to detect the overpayments to Phillips. Overpayments began with the Plan's first payment of benefits to Phillips in November 1998. Sanborn discovered similar overpayments in 2001, but overpayments to the plaintiff were not discovered until 2005. The Administrative Committee breached its fiduciary duty of care owed to Phillips. Verostic, a member of the Administrative Committee, essentially "rubber stamped" Parsley's calculation of benefits, and thereafter negligently communicated an incorrect amount of benefits to Phillips. Phillips had no way of knowing that he was being overpaid. The

- 18 -

overpayments in no way occurred through the fault of Phillips, and Phillips used the amounts he was overpaid as he received them to pay his routine expenses. He rationally planned his life based on the amount stated in his benefit letter and in the amounts received each month from the Plan for almost seven years, and as a result he changed his position. Although the amount of the monthly recoupment is small, Phillips has sufficiently showed that a $163.29 deduction is a hardship because he is disabled and lives on a fixed income.

In Count III of the Complaint, Phillips alleges that "Brink's and/or the Plan has no right, under the Plan or through equitable considerations, to make any deduction in monthly benefits to try and recover any alleged overpayment." (Compl. ¶ 66.) I agree and find that the defendants may not recoup the amount of benefits overpaid to Phillips from the time he first received disability benefits in 1998 until his benefits were reduced according to the defendants' interpretation of the Plan in 2005. Therefore, the Plan must refund the $163.29 recouped each month from September 2005 to present and cease recoupment going forward.[10] I will award prejudgment interest on these amounts at the Virginia judgment rate set forth in Va. Code Ann.

_____

[10] The magistrate judge recommended ordering the defendants to cease collecting $176.33 in recoupment each month. Although the defendants recouped $176.33 per month for some time, the recoupment amount was later reduced to $163.29, and Phillips received a lump sum to account for the months that $176.33 was deducted from his monthly payments rather than $163.29. *See supra* note 4.

- 19 -

§ 6.1-330.54 (2008 Supp.).  *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030-31 (4th Cir. 1993).  Postjudgment interest will be at the federal interest rate, 28 U.S.C.A. § 1961 (West 2006).  *See id.* at 1031.

### D

The magistrate judge proposed finding that the misrepresentation contained in the Administrative Committee's November 5, 1998, letter to Phillips breached its fiduciary duty to communicate accurately with beneficiaries.  The defendant objects to this finding, arguing that (1) the Administrative Committee did not breach its fiduciary duty because the miscalculation was a ministerial error committed by a non-fiduciary employee, and the Committee merely "carried through" this administrative mistake, and (2) the magistrate judge failed to consider whether Phillips detrimentally relied on any misrepresentation.  Both of these arguments fail.

The Administrative Committee owes beneficiaries a duty of loyalty and a duty to communicate accurately.  *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001).  Verostic, as a representative of the Administrative Committee, negligently approved Parsley's calculation of Phillips' benefits knowing that the calculation would then be forwarded to the plaintiff.  *See Adams*, 261 F. App'x at 595 (concluding in a case involving the same defendants that "[b]y relying on Parsley's incorrect calculation, the Administrative Committee's subsequent

- 20 -

misrepresentation clearly violated its fiduciary duty to communicate accurately with a plan beneficiary.")  The mass amount of similar errors highlights the extent of the Administrative Committee's breach.  And with respect to this plaintiff, the breach continued for almost seven years.  Although Sanborn discovered errors as to other disability beneficiaries as early as 2001, the error was not corrected in Phillips' case until 2005.

The magistrate judge correctly concluded that detrimental reliance is not a necessary element for a claim of breach of fiduciary duty.  *See Blair v. Young Phillips Corp.*, 235 F. Supp. 2d 465, 470 (M.D.N.C. 2002).  Instead, the plaintiff must show that he is in need of injunctive or "other appropriate equitable relief" to remedy the breach.  *Id.*  An evaluation of the plaintiff's reliance is not necessary to fashion appropriate equitable relief in this case.  Even if it were, the evidence in the record shows that Phillips relied on his purported disability benefit amount when planning his family finances for almost seven years.  The defendant argues that Phillips could not have relied on the mistaken benefit amounts in becoming disabled and applying for disability benefits, but that is not the only manner in which the plaintiff may have relied on those calculations.  *See, e.g.*, *Phillips*, 194 F. Supp. 2d at 556 (noting that the plaintiffs depended on the amount of benefits distributed to them for years when planning the rest of their lives).

Case 2:08-cv-00031-JPJ-PMS   Document 63   Filed 07/13/09   Page 21 of 22   Pageid#: 1538

The magistrate judge concluded that an equitable remedy for the breach of fiduciary duty would be to preclude the defendants from recouping past overpayments to Phillips. I agree that this is the proper remedy in this case, but for the reasons stated above. I find that the Administrative Committee's breach is one of several factors that weigh against the defendants' ability to make use of the equitable doctrine of restitution to recoup past overpayments to Phillips.

IV

For the foregoing reasons, I find that the disputed Plan language is ambiguous, the Plan Administrator's interpretation is reasonable, the Plan may offset the plaintiff's disability benefits by the amount of UMWA benefits due upon normal retirement, the Plan may not recoup past overpayments in this case because it would be inequitable to do so, and the Administrative Committee breached its fiduciary duty to the plaintiff. Judgment consistent with this Opinion will issue forthwith.[11]

DATED: July 13, 2009

/s/ JAMES P. JONES
Chief United States District Judge

---

[11] The parties also seek attorneys' fees. While I have the power to award such fees, I find that such awards should not be made in this case. *See Quesinberry* , 987 F.2d at 1029 (listing factors to guide the court in exercising its discretion to award attorneys' fees under ERISA). Considering the applicable factors, and particularly considering the relative merits of the parties' positions, I find that attorneys' fees should not be awarded.

Case 2:08-cv-00031-JPJ-PMS   Document 63   Filed 07/13/09   Page 22 of 22   Pageid#: 1539