# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **HAROLD KENNETH PHILLIPS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08CV00031 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **THE BRINK'S COMPANY, ET AL.,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

*Richard F. Hawkins, III, The Hawkins Law Firm, PC, Richmond, Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

This ERISA case arises out of a dispute over disability benefits. After the plaintiff and the defendants were both granted partial summary judgment, they each move this court to award attorneys' fees. For the reasons set forth in this opinion, the plaintiff's motion for attorneys' fees is granted and the defendants' motion for attorneys' fees is denied.

I

For almost seven years, the defendants, The Brink's Company ("Brink's") and The Brink's Company Pension-Retirement Plan (the "Plan"), failed to deduct the value of Phillips's union retirement benefits from his monthly disability benefit

payments. This resulted in approximately $26,000 of overpayment. To rectify the error, in September 2005, the Plan began deducting the union benefits from Phillips's monthly disability checks. The Plan also elected to deduct an additional $176.33 per month (later readjusted to $163.29) until Phillips turned eighty-one in order to recoup the $26,000 overpaid with interest (a total of more than $50,000). Phillips, under several different theories, claimed that the defendants had to cease both monthly deductions and repay the money already deducted.[1]

On July 13, 2009, this court granted partial summary judgment to the defendants and partial summary judgment to Phillips, finding that the monthly deductions for union benefits were reasonable and could continue, but the defendants could not recover any of the $26,000 already paid to Phillips because it resulted from a breach of their fiduciary duty of care. This court ruled that the defendants breached their duty because "[i]t took almost seven years for the Plan to detect the overpayments to Phillips"; similar overpayments were discovered in 2001 but the overpayments to Phillips were not discovered until 2005; the Plan's Administrative Committee rubber stamped rather than examined the original calculation; and the Administrative Committee "negligently communicated [the] incorrect amount of

---

[1] For a more complete recitation of the facts in this case, see *Phillips v. Brink's Co.*, 632 F. Supp. 2d 563, 567-68 (W.D. Va. 2009).

benefits to Phillips." *Phillips v. Brink's Co.*, 632 F. Supp. 2d at 574. Accordingly, the defendants were ordered to stop the deductions for overpayment and return the approximately $7,000 already deducted. At that time, the parties' requests for attorneys' fees were denied.

On July 27, 2009, Phillips moved this court to alter or amend the judgment. On August 25, 2009, this court granted his motion only with respect to the denial of attorneys' fees. The parties were granted leave to submit motions for attorneys' fees. The parties' motions and objections have now been fully briefed and are ripe for decision.

II

It is within this court's discretion to award attorneys' fees and costs to the prevailing parties in ERISA litigation. 29 U.S.C.A. § 1132(g)(1) (West 2009); *Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). There is no presumption in favor of attorneys' fees for prevailing parties, however. *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006), *overruled on other grounds by Carden v. Aetna Life Ins. Co.*, 559 F.3d 256 (4th Cir. 2009). In order to determine whether a prevailing party should receive attorneys' fees, this court must measure: (1) the degree of the opposing party's culpability or bad faith;

(2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993). None of these factors are dispositive. *Id.* They simply act as general guidelines for the fee analysis. *Id.*

Other considerations may also be relevant depending on the particular case. *Id.* Some courts deem the amount of recovery sought in the case to be a significant factor. If fees are not awarded when "the matter is relatively modest in terms of dollars, . . . [then the case] typically would not be brought," thus thwarting the remedial purpose of ERISA. *McIntyre v. Aetna Life Ins. Co.*, 581 F. Supp. 2d 749, 762 (W.D. Va. 2008); *see also Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1305 (6th Cir. 1991) (envisaging fee awards are proper when "there is litigation to establish the rights of a class of plaintiffs under an ERISA-protected plan and the economic situation of the plaintiffs is such that they could not bring suit except for the prospect of fee-shifting.").

Both parties here are considered prevailing parties because they were each granted partial summary judgment. *See Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 454 (4th Cir. 2004) (ruling that a party receiving "some relief on the merits of his claim" is a prevailing party). Therefore, this court evaluates both requests considering the *Quesinberry* factors.

A

The factors weigh in favor of granting fees to Phillips. While Phillips concedes that the defendants did not exhibit bad faith, it is nonetheless fair to conclude that the first factor weighs in favor of awarding fees to Phillips because the defendants' behavior was culpable. *See McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 258 (3d Cir. 1994) ("[I]t will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct.").

Culpable conduct is "blameworthy" or "involving breach of a duty," *Black's Law Dictionary* 435 (9th ed. 2009), but "normally involves something more than simple negligence," *Werner v. Upjohn Co.*, 628 F.2d 848, 856 (4th Cir. 1980). A fiduciary breach is evidence of culpability. *See White v. Martin*, 290 F. Supp. 2d 986, 990 (D. Minn. 2003) ("[A]lthough there is no significant evidence of bad faith by [the defendant], the evidence at trial did conclusively show that she breached her fiduciary duties to the Plan, thus establishing some culpability."); *see also Phillips v. Mar.*

*Ass'n, L.L.A. Local Pension Plan*, 198 F. Supp. 2d 838, 844 (E.D. Tex. 2002) ("A party's conduct may rise to the level of bad faith where there is a breach of fiduciary duty.").

The defendants are culpable, not for making the initial miscalculation, but in their failure to uncover it in a timely manner. *See Porter v. Hartford Life & Accident Ins. Co.*, No. 4:08-CV-637(WRW), 2009 WL 1940520, at *3 (E.D. Ark. July 2, 2009) ("The problem arose when [the benefits administrator] failed to discover its error and waited an excessively long time to correct the problem caused by the error."). The Plan's administrators first erred by failing to double-check, rather than "rubber stamp," the benefits calculation. The benefits calculation represents the monthly income of Phillips. This figure had (and has) a significant economic impact on Phillips and his ability to plan for the future. Therefore, the Plan's administrators owed it to Phillips to check such an important calculation.

Phillips was not the only person who had his benefits miscalculated. For a period of time, the Plan's administrators made the same mistake over and over again. In 2001, the Plan's administrators finally discovered that they had failed to subtract retirement benefits from many participants' monthly payments, but they chose not to perform a special review to immediately correct the error.

The mistake in Phillips's file was eventually discovered in a routine annual review in 2005. But this was three or four annual reviews after 2001, when the administrators first became aware of the miscalculation, which means that the administrators failed to look for the error in those previous annual reviews—delaying the correction even further.

These repeated gaffes—neglecting to double-check the original calculation, electing not to conduct a special review immediately after the mistake was discovered, and then missing the error in the following few annual reviews—resulted in Phillips relying on the incorrect monthly benefit amount for nearly seven years. Consequently, the defendants are culpable in this matter.

The second and third factors also weigh in favor of awarding Phillips attorneys' fees. The defendants concede that they have the assets to pay the fees requested. Although there is a question of who will be paying the fees—the defendants contend it would come out of the Plan's assets, thereby diminishing the amount of money otherwise available to the beneficiaries—no one claims it would be a hardship for either defendant to pay.

Additionally, in furtherance of the third factor, awarding fees will also serve as a deterrent to other benefits plan administrators. They will be encouraged to prevent similar mistakes, and more importantly, they will be motivated to catch

mistakes early and without unnecessary delay. *See Id.* ("[A]n award of fees . . . would hopefully encourage similarly-situated companies to have procedures in place to catch overpayments within a reasonable period of time."); *White*, 290 F. Supp. 2d at 991 (finding that, while the defendant's fiduciary breach was largely a product of mismanagement and negligence, awarding attorneys' fees would serve as a "deterrent and notice to other ERISA fiduciaries that they must remain scrupulously informed on all matters that relate to their fiduciary duties, so that they do not harm their plans or participants."). This factor carries more weight in this case because the defendants were found in breach of their fiduciary duty. *Mar. Ass'n*, 198 F. Supp. 2d at 845 ("[S]ince this court found that there *was* a breach of fiduciary duty in this case, [the third] factor weighs heavily in favor of an award of attorneys' fees.").

The fourth factor, on the other hand, does not weigh in favor of awarding attorneys' fees because Phillips admitted he did not seek to benefit other plan participants, and this case did not resolve any significant legal ERISA issue. Although there is a possibility that others who have suffered from the same miscalculation will benefit from the ruling in this case, this is not enough to satisfy the fourth factor. *Yarde v. Pan Am. Life Ins. Co.*, Nos. 94-1167, 94-1312, 1995 WL 539736, at *12 (4th Cir. Sept. 12, 1995) (unpublished) (finding the fourth factor did not support fees because, "[a]lthough the consequence of our overall decision is to

provide a somewhat larger group of individuals with protection under ERISA," the claim and relief sought were purely for the plaintiff's personal benefit); *but see Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1218-19 (4th Cir. 1990) (holding that "a subjective intent of altruism [is] not necessary to further the purposes of ERISA").

The fifth factor also neither weighs in favor of nor against awarding Phillips attorneys' fees because each party had relatively equally merited positions. The defendants argue that their case was much stronger than Phillips's because they were granted summary judgment on six claims while Phillips was only awarded summary judgment on one. However, because many of Phillips's claims were intertwined with others and some were made only in the alternative, it is more precise to view the litigation of consisting of two main issues—whether deductions could be made going forward for the retirement benefits and whether deductions could be made to recover the overpayments already made—of which each party won one.

Nonetheless, even if I were to accept that the defendants' success was six times greater than Phillips's, that does not mean his positions were necessarily meritless. Indeed, Phillips's positions on the six unsuccessful claims were persuasive, albeit less so than the defendants', and the case was a close one. As the defendants themselves state, the fifth *Quesinberry* "[f]actor is not intended to measure who won or lost, but

the 'relative merits' of the parties' positions." (Defs.' Mem. Opp'n Pl.'s Mot. Alter or Amend J. 7).

Thus, balancing all the *Quesinberry* factors, I find that the first three weigh in favor of fees and the last two weigh either neutrally or slightly against awarding fees. The scales are tipped further in Phillips's favor, though, by an additional consideration. The amount of monetary relief awarded in this case, approximately $7000, is not enough to justify the cost of litigation. Therefore, if fees are not awarded, the next similarly-situated beneficiary might be inhibited from litigating, and other plan administrators might be permitted to breach their fiduciary duties without consequence.

B

In contrast, the *Quesinberry* factors counsel against awarding fees to the defendants. For one, Phillips did not show any culpability or bad faith. He was not aware of the miscalculation of his benefits, and he conducted the litigation in good faith. It is also clear Phillips cannot afford to pay any attorneys' fees on his fixed income. Because of that, an award would serve as a deterrent against others seeking to sue the defendants, but in this context, the deterrent effect is entirely undesirable. Finally, as discussed more fully in Part IIA, the merits of the parties' positions were

relatively equal. Thus none of the *Quesinberry* factors weigh towards awarding legal fees to the defendants.

III

Having determined that Phillips should be awarded attorneys' fees and expenses, this court must now determine how much to award. "The starting point for establishing the proper amount of an award is [the so-called lodestar product,] the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994); *see Christian v. Dupont-Waynesboro Health Care Coverage Plan*, 12 F. Supp. 2d 535, 538 (W.D. Va. 1998) (applying the lodestar method to determine attorneys' fees in ERISA litigation).

That does not end the inquiry, however. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Other considerations, such as those identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), may require that the award is adjusted from the lodestar figure.[2] *Rum Creek*, 31 F.3d at 175. "The most critical [of

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the undesirability of the case;

those] factor[s] . . . is the degree of success obtained." *Freeman v. Potter*, No. 7:04-cv00276, 2006 WL 2631722, at *5 (W.D.Va. Sept. 13, 2006); *see Hensley*, 461 U.S. at 434-35. "When plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward" in accordance with the results obtained. *Rum Creek*, 31 F.3d at 174.

The first step, then, is to calculate the lodestar figure in this case. The moving party has the burden of demonstrating that the hourly rate requested is "'what attorneys earn from paying clients for similar services in similar circumstances.'" *Chadwell v. Lee County Sch. Bd.*, 535 F. Supp. 2d 586, 603 (W.D. Va. 2008) (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007)). In determining the reasonable hourly rate, this court looks to the "'prevailing market rates in the relevant community.'" *Chadwell*, 535 F. Supp. 2d at 603 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Phillips's counsel, Richard F. Hawkins, III, billed his legal work at two different hourly rates during this litigation: in 2008, his hourly rate was $250; and in 2009, it increased to $275. The defendants only challenge the 2009 hourly rate. Phillips has submitted several affidavits from other attorneys who practice ERISA litigation who believe $275 is a more than reasonable rate to charge considering Mr.

---

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19; *Rum Creek*, 31 F.3d at 175.

Hawkins's experience. The defendants nonetheless contend that $275 is too high citing *Chadwell*, a § 1983 case in which this court found $250 to be the prevailing rate in the Big Stone Gap Division of this court. *See* 535 F. Supp. 2d at 589. I reject this contention.

Assuming *arguendo* that the rate from a § 1983 case is the correct standard in this case , the defendants' assertion fails to account for reasonable inflation of billing rates in the time since *Chadwell*. The legal services billed in *Chadwell* were conducted in 2007 and earlier. *See id.* at 591. It is certainly reasonable for an attorney conducting work in 2009 to bill at a rate only twenty-five dollars greater. Therefore, I find the hourly rates submitted by Phillips entirely fair.

As for the amount of hours expended, the bills submitted show that Mr. Hawkins spent 279.7 hours in total on this matter. At his 2008 hourly rate of $250, Mr. Hawkins performed sixty-seven hours of legal work. In 2009, when his rate went up to $275, he performed 174 hours of legal work and spent 38.7 hours traveling, which he bills at fifty percent of his hourly rate or $137.50. The unadjusted lodestar total is thus $69,921.25—$16,750 (2008 legal work) plus $47,850 (2009 legal work) plus $5,321.25 (2009 travel).

This figure needs to be adjusted, however, to account for the fact that Phillips only prevailed in part. This does not mean though, as the defendants suggest, that

this court should simply multiply the lodestar product by the fraction of the total claims upon which Phillips ultimately prevailed—one out of seven. *See Hensley*, 461 U.S. at 435 n.11 (rejecting "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" (internal quotations omitted)).

As mentioned in Part IIA above, this lawsuit is best depicted as one of two main issues in which the plaintiff won one. However, an across-the-board reduction of fifty percent is not necessary. When plaintiff's claims for relief "involve a common core of facts or will be based on related legal theories," as they do here, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. In other words, bringing two related issues in the same lawsuit undoubtedly results in some economies of scale.

Based on the limited relief Phillips obtained, Phillips performed a thorough line-by-line reduction in his attorneys' fees—eliminating charges for the issue upon which he did not prevail—and then another twenty-five percent across the board reduction. As a result, Phillips only requests $39,780.94 in fees, a forty-three percent reduction from the unadjusted lodestar figure of $69,921.25. This reduction is sufficient to discount for the plaintiff's limited success. None of the other *Johnson* factors require further alteration of the fees.

I therefore find Phillips's fee request reasonable and award him fees in the amount of $39,780.94. I also find that the costs submitted by Phillips in the amount of $3,794.55 were justified and appropriate for this matter.

IV

For the foregoing reasons, I find that Phillips is entitled to attorneys' fees in the amount of $39,780.94 and expenses in the amount of $3,794.55, while the defendants are not entitled to attorneys' fees or costs. An Order consistent with this Opinion will issue forthwith.

DATED: October 31, 2009

/s/ JAMES P. JONES
Chief United States District Judge